## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

KELLY P. STANLEY,                                )
                                                 )
      Plaintiff,                          )
                                                 )
      v.                                  )      No. 3:13-05076-DGK-SSA
                                                 )
CAROLYN W. COLVIN,                               )
Acting Commissioner of Social Security,          )
                                                 )
      Defendant.                          )

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Kelly Stanley seeks judicial review of the Commissioner of Social Security's denial of her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq.* The ALJ found that Plaintiff suffered from hypertension and degenerative disk disease of the spine and knees, but she retained the residual functional capacity ("RFC") to perform past relevant work as a retail manager, convenience store clerk, and casino cashier, thus she was not disabled as defined in the Act.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

### Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits and SSI benefits on September 21, 2010, alleging a disability onset date of July 19, 2009. The Commissioner denied Plaintiff's applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The

ALJ held a hearing and on March 9, 2012, issued her decision holding Plaintiff was not disabled as defined in the Act.  The Appeals Council denied Plaintiff's request for review on March 27, 2013, leaving the ALJ's decision as the Commissioner's final decision.  Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability and SSI benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).  Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The court may reverse the Commissioner's decision only if it falls outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact.  *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the

Commissioner follows a five-step sequential evaluation process.[1]  Plaintiff contends the ALJ

erred (1) by not finding her depression was a severe impairment; (2) by incorrectly weighing the

opinions of various physicians; and (3) by failing to re-contact her treating physicians to gather

more information.  The Court finds no merit to these claims.

**A.     The ALJ did not err in finding Plaintiff's depression was not a severe impairment.**

A medically determinable impairment is "severe" if it more than minimally affects the

claimant's ability to perform basic work activities.   The impairment "must result from

anatomical, physiological, or psychological abnormalities which can be shown by medically

acceptable clinical and laboratory diagnostic techniques . . . and must be established by medical

evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's]

statement of symptoms . . ." *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011).  The claimant

bears the burden of establishing that her impairment is severe.  *Kirby v. Astrue*, 500 F.3d 705,

707 (8th Cir. 2007).   Although severity is not an onerous requirement, it is also not a toothless

standard. *Id.* at 708.

A medically determinable mental impairment is not severe if it results in no episodes of

decompensation and no more than mild limitations in the areas of maintaining concentration,

persistence and pace; social functioning; and activities of daily living.   20 C.F.R. §§

---

[1] The five-step process is as follows:  First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity.  If so, he is not disabled; if not, the inquiry continues.  At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments.  If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled.  At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520.  If so, the applicant is considered disabled; if not, the inquiry continues.  At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work.  If so, the applicant is not disabled; if not, the inquiry continues.  At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work.  20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled.  After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *King*, 564 F.3d at 979 n.2.

404.1520a(d)(1), 416.920a(d)(1).  After analyzing Plaintiff's depression under these four broad

areas, the ALJ found that Plaintiff suffered from a moderate limitation in social functioning, but

her overall ability to perform basic work was minimally limited.  R. at 15-16.

Substantial evidence on the record supports this finding.  As the ALJ noted, Plaintiff

never received aggressive medical treatment, hospitalization, or psychiatric intervention due to

any psychological impairment.  R. at 15.  Plaintiff testified that she never sought or received any

mental health treatment, R. at 62, and treatment notes from August 2009 through November

2010 show that Plaintiff reported to her doctors over a dozen times during this period that she

was not depressed.  R. at 369, 374, 382, 385, 387, 393, 397, 399, 402, 406, 414, 425, 489.  Thus,

there is no evidence that Plaintiff's depression more than minimally affected her ability to

perform basic work.

**B.      The ALJ did not err in weighing the various doctors' opinions concerning Plaintiff's RFC.**

Plaintiff's second argument is that the ALJ erred in determining her RFC by incorrectly

weighing the opinions of various physicians.  More specifically, Plaintiff argues the ALJ erred in

discounting the opinions of examining physician Dr. Gilbert Mobley, M.D., and treating

physician Dr. Thomas Briggs, M.D., and in giving greater weight to the opinions of Dr. Jeff

Woodward, M.D., and Edwin Cunningham, M.D., physicians who saw Plaintiff in connection

with a worker's compensation claim, and consulting physician Dr. Charles Mauldin, M.D.

These five physicians' opinions as to Plaintiff's RFC varied widely.  Dr. Mobley, a

specialist in emergency medicine who examined Plaintiff once two days before her

administrative hearing, opined that Plaintiff faced numerous functional limitations in her ability

to work, lifting no more than ten pounds occasionally and five pounds frequently; standing or

walking no more than two hours a day; and lying down at least two times during a work day for

fifteen to twenty minutes. R. at 583-84. In a brief treatment note written after performing a microdiscectomy[2] on Plaintiff's herniated disk, Dr. Briggs recommended that Plaintiff be limited to sedentary work and that she work no more than four hours a day. R. at 22.

In contrast, Dr. Woodward, who treated Plaintiff for nine months following her back surgery, saw Plaintiff's condition gradually improve and found that as of July 2010, Plaintiff could lift up to 25 pounds continuously. R. at 22, 435. Dr. Cunningham examined Plaintiff upon referral from Dr. Woodward and agreed with Dr. Woodward's assessment, noting Plaintiff's post-surgical MRI "looked quite good." R. at 375-76. Finally, Dr. Mauldin examined Plaintiff one month after her administrative hearing and found relatively few limitations on her ability to work. R. at 592-602. He opined she could occasionally lift up to fifty pounds, frequently lift up to twenty pounds, and continuously lift ten pounds; and she could walk four hours a day, stand for six hours, and sit for seven. R. at 597-98.

Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). An ALJ cannot, however, give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques, or if the opinion is inconsistent with the other substantial evidence of record. *Id.*; *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise*, 641 F.3d at 925.

---

[2] A "discectomy" is the excision of an intervertebral disc. A "microdiscectomy" is debulking of a herniated nucleus pulposus using an operating microscope or loupe for magnification. *Singh v. Apfel*, 222 F.3d 448, 450 (8th Cir. 2000) (citation omitted).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

Additionally, the Court notes that a claimant's RFC is based on the combined effects of all of a claimant's *credible* limitations. 20 C.F.R. § 416.945 (emphasis added). It is based on all the relevant *credible* evidence of record, not just evidence from medical reports or medical sources. *Id.*; *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (emphasis added). And it is the claimant's burden, not the Commissioner's, to prove her RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Court emphasizes that the ALJ could consider only Plaintiff's credible limitations because the ALJ's determination here was obviously driven in part by the undisputed finding that Plaintiff was not fully credible.[3] For example, the ALJ discounted Dr. Mobley's opinion at least in part because it was based on Plaintiff's subjective complaints which were not credible. R. at 22; *see Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding an ALJ may discount an opinion if it relies upon a claimant's unsupported subjective complaints).

The ALJ's other decisions with respect to weighing the other physicians' opinion is also supported by the record. For example, the ALJ gave Dr. Briggs November 2009 treatment note little weight because the suggested work restrictions "were temporary in nature and rather vague," reflecting her condition in the immediate aftermath of her back surgery, and the

---

[3] The ALJ found Plaintiff was not fully credible because: (1) there was a lack of objective medical evidence supporting her claims; (2) she exaggerated the severity of her symptoms; (3) she failed to comply with suggested treatment; (4) she sought medical treatment sporadically; (5) the conservative nature of the prescribed treatment; (6) her activities of daily living were inconsistent with her claims of debilitating symptoms precluding her from performing any work; (7) her poor work history; and (8) she sought and received unemployment benefits during the time period she claimed to have been disabled. R. at 19-21. Plaintiff does not dispute this credibility determination.

restrictions did not take into account Plaintiff's subsequent improvement made in the following months under Dr. Woodward's care. R. at 22. Since substantial evidence in the record confirms Plaintiff's condition improved in the months following her back surgery, R. at 369, 271, 435, 461, the decision to discount Dr. Brigg's opinion was appropriate. Additionally, the ALJ's decision to give "great" weight to Dr. Mauldin's opinion is supported by the doctor's own observations of the Plaintiff, namely, how she moved around the room and supported herself during the examination, and the fact that the doctor's opinion was consistent with the objective medical evidence, such as Plaintiff's post-surgical MRI. R. at 21, 592-96. Similarly, the ALJ did not err in giving Dr. Woodward's opinion "great" weight because it was supported by the objective medical evidence and was largely consistent with Plaintiff's demonstrated limitations. R. at 22.

## C.      The ALJ did not err in failing to re-contact Dr. Briggs.

Finally, there is no merit to Plaintiff's suggestion that the regulations required the ALJ to re-contact Dr. Briggs to seek clarification of his opinion. At the time the ALJ issued her decision, the regulations required an ALJ to recontact a physician only if a crucial issue was underdeveloped that needed to be resolved, not if the ALJ properly discounted the physician's opinion.[4] *See, e.g., Martise*, 641 F.3d at 927 (8th Cir. 2011) (noting "a lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record"); *Goff*, 421 F.3d at 791 (holding the ALJ may discount a treating physician's opinion without seeking clarification when the opinion is inconsistent with other substantial evidence). Accordingly, there was no error here.

---

[4] On March 26, 2012, new regulations went into effect that completely omitted language about recontacting physicians. *Compare* 20 C.F.R. § 404.1512(e) (2011), *with* 20 C.F.R. § 404.1512(e) (effective March 26, 2012).

## Conclusion

Since substantial evidence supports the ALJ's decision, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:     August 11, 2014          /s/ Greg Kays
                                 GREG KAYS, CHIEF JUDGE
                                 UNITED STATES DISTRICT COURT